Good morning. Good morning, Your Honor. Pharrell Fuller with the Federal Public Defender's Office, Northern District, California, for Mr. Pulido, the appellant. I'd like to reserve two minutes for rebuttal. Very good. Your Honor, in this instance, the district court erred in several ways. First, the district court failed to consider all the four Barker factors to deny Mr. Pulido's speedy trial motion. Once the court determined that it was likely that Mr. Pulido had met the threshold requirement for consideration of those additional factors, the court was then required to consider, one, the length of the delay, the reason for the delay, my client's assertion of his rights, and whether or not prejudice can be presumed. Here, there's, with respect to the first issue, the reason for the delay, the court gave no consideration to the defense argument that the government action in delaying Mr. Pulido's right to a speedy trial was more than mere negligence. It was our position that this was willful, that this was a part of a pattern in practice on the part of that particular... Can I just ask one question, counsel? I don't want to interrupt your flow of thought, but since we have so little time, I want to get to the question issue. As I understand it, your client was serving a state sentence for an unrelated crime at this time. Is that right? That is correct. So under the circumstances, he didn't lose any ability to serve a concurrent sentence, and he had no real defense, if you will, in light of his admission to the immigration officer. So I'm struggling, not with Annie Barker and the other tests that we need to apply here, I'm struggling with where there was prejudice that was shown in this case. Help me with that. Well, Your Honor, the issue of prejudice, the court's concern about whether or not he had an opportunity to receive concurrent time, it's our position that that should have been assessed at the time of the filing of the motion. At the time of the filing of the motion, it was conceivable that he could have argued for concurrent time, even though it was subsequently denied. Additionally, Your Honor, the prejudice that we're asking... But what case law are you relying upon for when the determination of prejudice occurs? Your Honor, for determination of prejudice, if I may have one moment. Okay. Doggett, Your Honor. What we are arguing, we would defer the Court to Doggett in the consideration of the prejudice there. Also, our argument below to the district court was that the prejudice that the court did not consider was the reason for the delay, and whether prejudice should be presumed, separate and apart from Mr. Polito's lost opportunity to argue for concurrent time. Why don't we just say seven months is just not in the ballpark? I mean, we've said if you get up to a year, there may be a problem. Why don't we just say seven months is just too short of a period of time? Well, Your Honor, the — it is our position that the delay is not seven months. It's our position that the delay is counted from the time of the criminal complaint, which I believe is part of the contention between the government and the defense here. Your point. But just assume for the sake of my question that it is seven months. We haven't held that seven months is not too little. We always keep chipping away at the other end. It seems to me we would satisfy a lot of finality of a lot of lawyers and a lot of judges if we said that there's something that is too minimal, and seven months is too minimal, and why don't we just decide that? Well, Your Honor, I think that that would be an error because it would disregard the earlier line of cases holding that it should be considered from the time of the criminal — the filing of the criminal complaint. I understand. But just assume it's seven months. And we'll get to the other issue later. For purposes of my argument, can you see anything that in our cases it would say that seven months — is there anything wrong with saying seven months was just insufficient time for us to get into the Baker analysis? Your Honor, I think it's close. I do concede that it is close. For purposes of proceeding then to that analysis, the eight months being the — understood as far as a reasonable delay, meeting that threshold requirement to then proceed to the analysis as required under Barker-Wingo. Well, there has been some eight-month discussion, but the more direct one is one year is too long. And it seems to me if there's one year is too long, something is too short. And seven months appears to me to be a relatively logical time. It is — there's no cases that would forbid us from doing that. No, Your Honor. However, in this instance, we are looking at a delay of a considerably longer period of time from the filing of the criminal complaint. Yes. I understand that point. Thank you. I just — I appreciate your candor on the other point. But do you — I'm not — I haven't forgotten your other point. Do you agree, Counsel, that our cases of Northern versus United States and U.S. versus Tarrick are no longer good authority based on Loud Hawk and McDonald? No, Your Honor. We do not agree with that. Okay. The reason is because we believe Loud Hawk is distinguishable. Loud Hawk rejected the Respondent's claim that a speedy trial clause should apply at the time between dismissal of one indictment and the return of the second indictment. As well as McDonald, that is also distinguishable because the Court held that the speedy trial clause did not apply to the time during which no charges were pending. Here we have a criminal complaint. We have a criminal complaint, an indictment, and a warrant. This case here is factually distinguishable from those cases, and we believe that D'Aquino, Venus, Benson, as well as Northern, are still controlling those earlier cases. You — you think it should be the time ICE files a hold — a holding statement. That's when we start? In this instance, Your Honor, it is the immigration hold in combination with the criminal complaint. It is our contention that these — the clocks began on the — the date that the criminal complaint was filed on February 9th, 2012. That can be found in the excerpt of record at 1-23 to 1-25. At that point, he was accused within the meaning of the Sixth Amendment. He was — both he had the detainer, he had the unexecuted warrant for his arrest, as well as the criminal complaint accusing him of having illegally reentered into the United States. What's the statement filed by ICE to do with this case? Well, the statement filed by ICE is under the particular practice that ICE was engaged in at that time. ICE was actually using this as a means to keep tabs on individuals, to hold them for purposes of a criminal prosecution. Now, unlike other cases where they will say, oh, well, the criminal complaint, we don't know. That's just a basis for obtaining an arrest warrant. We don't know whether this person may be subsequently charged with the offense. We know that in this instance because the U.S. Attorney's charging decision was made sometime before that on March 21, 2011. He was all but a certainty that he was going to be charged with illegal reentry. At that point, we had all three of those factors in combination. That put him — he was accused within the meaning of the Sixth Amendment. At that point, the government should have proceeded in a more reasonable and a more efficient manner to assure that his right to a speedy trial was protected. But in this instance, they did not. And it is our contention that the reasons why they did not do that should be considered in determining whether prejudice actually exists or whether prejudice should be presumed. Can I hear you talk about the reasons? Just give me the best case as to why you think this delay was caused by a deliberate policy that — and, you know, what — I understand your argument that that should negate your inability to show prejudice here. But so what's the best case for the government having some very — The best case, Your Honor, is the transcripts that we provided to the court about this earlier case, in which this practice was brought to the attention of the government. The government said, well, thank you for bringing this to our attention. That was a transcript of the proceedings before Judge Ware. We will endeavor in the future to bring these defendants more quickly before the court so that they can adjudicate these charges. But just pinpoint what's the — what's the evil that the government is engaged in? The evil that the government is engaged in is that these immigration detainers are civil detainers. They preclude any ability by Mr. Polito to assert his right to a speedy trial, while it does benefit the government because they have this placeholder of the criminal complaint in combination with the warrant and in combination with what is basically a bulletproof civil immigration detainer, which would preclude him from demanding under the interstate agreement on detainers that he be brought before the court. And he has no notice that these charges are pending at that time. By Mr. Polito's account, he believes, I am serving a state sentence upon which after I will be deported. That is the basis of this immigration hole. Aha, it is not. What that immigration hole really means is that you are going to be charged with illegal reentry once you are done from here. Can I — can I try to put it — I want to make sure I understand this. So they file the — the government files the complaint. That does not trigger any obligation under the interstate agreement on detainers to bring the defendant properly into Federal court? No, it does not, Your Honor. But indictment would. An indictment would. And so they intentionally delay taking that next step of indicting precisely so that they can have the person finish serving the sentence in State court? Is that what they're trying to accomplish? That is what we are getting at, Your Honor. At that point, he is — you have a situation where you have separate sovereigns. While the United States can decide that it will not — and the district court may decide it will not give him concurrent time, the court doesn't really get to make that decision for the State court. The State court may have decided, well, in light of the fact that this — this individual is going to be subsequently prosecuted for illegal reentry, I will take that into consideration in imposing this sentence, because it looks like he's going to be — he's going to be punished twofold for this offense. One, for having committed this new State offense, and two, for having come to the United States and committed this new offense. Those — given that procedural history and the particular facts of this case, that is sufficient to establish that prejudice should be presumed here, because it is not mere negligence. We know that it's not mere negligence. It's a negligence if the government says, well, you know, we didn't know this time. Well, we know they know. We knew they knew. It's a difficult area, and you bring up some interesting problems, but under Valentine, there has to be a serving of summons or an arrest or an indictment. We don't have that here, do we? How do we get the start time back because of what Ice did? Where was the indictment or arrest that we can trigger? The — while the indictment — what triggers it, Your Honor, is our position is that it is the criminal complaint and the accusations laid out there on the date that they obtained that warrant. As far as Valentine, we believe it's distinguishable from a complaint issue in our case because it addressed whether the Sixth Amendment is triggered by an arrest by State authorities. Here, although the warrant was not executed, that delay in executing that warrant should not be attributable to Mr. Polito. That warrant was delivered the same day that the criminal complaint was issued to the United States Marshal Service. They did not serve that warrant on Mr. Polito until he actually appeared in court on February 23, 2013. So it's — So it doesn't — it really doesn't do anything for him or against him until it's served on him. Why can we — how can — how do we push it back? How do we push it back to prior to the service? We push it back, Your Honor, by relying on Marion and the assertion of whether or not he's accused within the meaning of the Sixth Amendment. And he is most certainly accused. We have those three combinations — the detainer, the accusations that this man has committed this offense, and a means by which he is detained, the immigration detainer. Standing alone, the immigration detainer, we assert, would obviously not trigger a Sixth Amendment consideration. But we have the immigration detainer in combination with the criminal complaint and in combination with a warrant to the issue. Plus, add on that, the U.S. attorney's decision prior to that, which we have established in the record, that he was going to be prosecuted for this offense. So any concern that, oh, the criminal complaint doesn't serve that same purpose here because the court may or may not have charged him with this offense, as in favors, that concern is not here. We know for certain he will be charged with this offense. And that immediately upon his release, as was the case here, they would charge him with illegal reentry and bring him before federal court. Thankfully, the government issued a writ ad prosecutatum. But at that point, it was too late. His right to a speedy trial had already been impermissibly and inexcusably delayed for 18 months. Okay. I think we have more questions right now. Okay. Thank you. Let's hear from the government. May it please the Court. Good morning, Your Honors. Owen Mardikin for the United States. I'd like to start with something the Supreme Court said in the Merriam decision. At footnote 18, the Court wrote, There is no constitutional right to be arrested. The Court would not put law enforcement in the impossible position of potentially violating someone's Fourth Amendment right if they arrested them too early or How about if you start with a response to the defense's accusation that your office has this policy of deliberately skirting the requirements of the interstate agreement on detainers? I have six reasons why there wasn't such a policy in this case. First, a writ was used. Supposedly, the accusation is that part of this policy was to not use writs to bring defendants into federal court. Here, a writ was used. Well, no. No, no, no. It's that you filed a complaint, so you've already — your office has already made a decision to prosecute this person. But what you're intentionally doing is delaying the indictment of the individual until basically they finish serving the entirety of their State sentence, so that you don't have to promptly bring them into federal court. I mean, that's the — Correct. So don't say, oh, but we used a writ. Yeah, you did, but the allegations that you waited for 13 months, whatever, and that's the harm that was caused to the defendant. The allegation is that the practice was to wait until the State sentence had expired before bringing them in. That did not happen here, either. This defendant was brought in one year and nine months before his State sentence expired. So, again, no evidence of some practice. Counsel, again, I'm really anxious to hear your response, but so far you've swung and missed twice. Okay. The allegation is that you are intentionally delaying the time between the filing complaint and the indictment. Okay? Yes. And here there was a delay of, what was it, 13 months? I can't remember the exact amount. Well, between the complaint and the indictment, there was a delay of 11 months. Eleven months. Okay. The allegation is that you're intentionally doing that because if you filed the indictment shortly after the complaint, which is what you normally do after you decide to charge someone, you would be required under, I think it's the interstate agreement on detainers, to promptly bring the defendant into Federal court. And you don't want to do that. That's the allegation, right? And so you have this policy of intentionally delaying the time between the filing of the complaint and the indictment. So just respond to that particular point. It's purely an accusation. I mean, they're asking this Court to infer purely from the delay that it was intentional. And there's no basis for doing that. Well, they're saying that, yeah, they're saying that you do that all the time. And I guess I'm trying to – I wanted to hear you say, no, we don't, and we've done nothing. We don't. I mean, and frankly, the AUSA told the district court that that's not our policy. It's never been our policy, that if there's been a delay, it's been due to negligence and we'll try to clean it up. But the AUSA never admitted to any kind of policy, and the district court certainly didn't find that there was any policy or practice. You're talking about in the Castro case, or are you talking about in this case? I'm talking about Castro, where this conversation is going on. The district court was concerned about one thing in Castro – well, two things that didn't happen here. One, in Castro, the ICE detainer was lodged basically simultaneously with the filing of the criminal complaint. And so the court was concerned in Castro, well, is this some kind of a plan to do this together so that, you know, the ICE detainer serves the function of keeping the person sort of on the radar screen once they get released from state prison? That didn't happen here, because the detainer was filed in July of 2010. That was when the detainer was lodged by ICE. It was over a year and a half later that the complaint was filed. The case, as they acknowledged, was not even accepted for prosecution until March of 2011, which was, I believe, about eight or so months after the July time that the detainer was lodged. I don't think counsel's complaining about the delay between the filing of the ICE detainer and the filing of the criminal complaint. That obviously wouldn't trigger any Sixth Amendment concerns. It's just from the point of filing the criminal complaint forward. My point is that that's what was concerning the district court. The district court in Castro was concerned about that particular thing. The district court didn't find that there was some kind of intentional practice. I mean, it's, I think, easy for the defense to ask this court to infer that there's intent behind the pure fact of the delay, but there's no evidence. But it's not just this case. I think defense counsel submitted a declaration in the district court, I know we have it before us, that gave, I think they tried to do something like a statistical analysis of cases from, maybe it's just your division of the U.S. Attorney's Office, and they kind of plotted out what the typical delay is. And it was, I don't know, I'd like to hear your response to what's in that declaration, because it seemed like there were quite a few cases in which the same kinds of delays were being seen between the filing of the criminal complaint and the charging with the indictment. I think they cherry-picked those cases. We don't, unfortunately, I mean, I'm hampered by what is in the record. They put that in the record. There's no competing statistical analysis that was done in the record. You didn't bother to respond to that, is that what you're saying, in the district court? I'm saying in the district court, we did not do a competing statistical analysis of those cases. So tell me what's flawed about that. I mean, you're going to maybe say you can't do it, but what's flawed about what they did present? I think what's flawed is that the inference, or that this Court has asked to presume from that delay, is that because there is delay in these cases, it must be an intentional plan. And really, that's all it comes down to. Yeah, if you do it, you know, I don't remember how many cases, but they looked at a couple hundred cases, was it? And if you're seeing across that many cases the same kinds of delays, why wouldn't you start to think, well, geez, maybe this is pursuant to some kind of policy this office has? Or is it saying, oh, it's just a coincidence that all these people had, you know, year-long delays? I'm saying there is no evidence of anything more than negligence being at play. There is no evidence of that. And I don't think there's any claim of evidence of anything more than negligence being at play in these delays. And in this case, in this particular case, even assuming that that was true, even assuming that there was this practice or policy, they claim this practice stopped in August of 2012, which is pre-indictment in this case. So, if this Court measures, as would be proper, Speedy Trial Act from the time of indictment, that doesn't even come into play in this Court's analysis. Because even if it assumed, and we're not asking the Court to agree that there was any practice, but it admittedly, the accusation is that it stopped pre-indictment in this case. I mean, I think if we start the clock with indictment, obviously the government's going to win. I think that's clear. Maybe you could respond on the legal point as to why the clock shouldn't start filing the complaint. Thank you, Your Honor. The Court, this Court is bound by Favors v. Eman. Favors v. Eman is the first published case in this circuit that interprets Marion in terms of whether a criminal complaint is a formal charge for purposes of the Speedy Trial Act, Speedy Trial Clause. I'm sorry. And the Court concludes that it is not. The complaint is not, though it may charge a crime or accuse someone of a crime in a colloquial sense, it is not a formal Sixth Amendment accusation. Because all it does is give the right to arrest warrant to law enforcement. And that is actually the controlling case in the circuit. Can I ask you this, though? Tell me if I'm wrong on this. My understanding is that we've got two cases that basically go your way and two cases that go the defendant's way. They're all from the 70s. And they're just there in conflict with one another. And you tell us, well, no, the controlling case is the first one. And that's not, I don't think that's necessarily how it works. Well, this Court, a panel of this circuit, first interpreted Marion in this context in Favors v. Eman. That is binding precedent. A panel that, for example, Lenteric, that came down the other way, can't bind this Court. But that's what I'm saying. We don't just get to pick the first one out of the box. That's not the way it works. If there's actually a conflict, we don't have authority as a three-judge panel to say, oh, well, we'll just go with either the first one or the last one. Well, I think the defense actually would agree that it is the first binding decision that binds this Court. I think Favors v. Eman is that binding authority. So there's no basis to distinguish the later cases that favor the defendant? Is that what you're saying? Well, there's only one later case that's in conflict, and that's Tarrick. And I don't think there's a basis to distinguish it. I think in Tarrick, they actually note that they're in conflict. There's a CF site with Favors v. Eman, but they don't go any further with that. And I think, unfortunately, it's just inconsistent authority. It's not part of this Court's binding line of cases. Arnold v. McCarthy and Pace are. So ultimately, the time should be measured from indictment. Given that fact, it's not long enough to trigger the further Barker inquiry. And so I would ask this Court to affirm. Before you go away, we don't get to see you again. I'm just sort of looking ahead. In the event that we disagree with you, do we have to send the case back to the district court? That is, there the district court provided some Baker analysis, but unfortunately left off two of the points of analysis. So would it be your position that if we disagree with you, it has to go back to the district court to finish the Baker analysis? Well, I guess, to be frank, it would probably depend on how this Court disagreed with me. I think that if the Court found a Sixth Amendment violation, I don't think we can find a Sixth Amendment violation just offhand. I mean, that determines a Baker analysis. No Baker analysis was properly made here because there's four factors and the district court only considered two. So it strikes me that if there's any issue at all on the two factors that were overlooked, that we'd have to send it back. That's my question. Is that accurate? I think it's prefiguring how the Court would write the opinion if that came down. That is probably what would happen in this case. What about the, assuming that the delay is seven months, have we got any cases out in there, not only our Court, but other courts of what is okay to be a minus? We always are chipping away at the other end. Do we have some cases that say seven months is too short? Well, the cases that follow Doggett, Doggett is the first case where the Supreme Court brings up this approaching one year. The cases following that take note of Doggett saying it's approaching one year. And in Lamb, for example, the Court said, but the survey of the circuit says that eight months is pretty much the threshold minimum. So that's the closest that this Court came post-Doggett to saying that eight months is a minimum. Now, pre-Doggett, this Court in Valentine said that six months was the minimum. But I think that given what the Supreme Court said in Doggett in Barker v. Wingo, I'm sorry, Doggett, and then what this Court said in the Beeman case, it's really meant to be closer to one year under the Court's post-Doggett authority. But we don't have anything that we could run on specifically saying seven months is just too much, it's just too short for us to get into the Baker analysis. The closest case is Lamb, Your Honor, where the Court doesn't make the holding, but the Court notices a survey of the circuit shows eight months is pretty much the threshold minimum. Thank you. Either of my colleagues have questions of defense counsel? We let him go over before. Okay, come on up, counsel, and we have some brief questions. Thank you, Your Honor. Yeah, I'd like to hear your response to the policy. Your Honor, the response to the policy is the government is quite correct. Those factual allegations remain unrebutted. The government did not contest those allegations before the district court. So if the court were inclined, the court must assume and take them at their face value at this point. If the court were inclined to believe that further factual issues need to be developed with respect to our claim that that is the basis for why prejudice should be presumed, then remand would be required. But I think before the court we have provided sufficient information from which this court could conclude that this is not inadvertent, that this was not mere negligence on the part of the government, that they were aware that this practice was ongoing and not seeking writs of habeas ad prosecutatum for individuals to bring them before the court in order to answer these charges. I want to address a couple issues about government counsel's argument about the cases. By my count, we have five cases to Sir Morgan's two cases. What we have here, Your Honor, is the earlier line of cases beginning with D'Acchino, Venus, Benson, and then the Marion case. The Marion case does not overrule those earlier cases. In fact, we note in our papers that footnote eight, the Marion court cited favorably to those three earlier cases by the Ninth Circuit and noted in there that most courts of appeals have recognized a Sixth Amendment right to speedy trial only after prosecution has been formally initiated. That is consistent with this Court's holding, consistent holding, dating back to the 50s, that it begins with a criminal complaint. Subsequent to Marion. We've said it begins with an indictment or arrest. Where have we said it begins with a criminal complaint? Your Honor, I would cite for the court D'Acchino, Venus, and Benson, as well as Northern, where it indicates the complaint starts the clock. Subsequent to the Marion case, this Court also decided the Tarrac case. Tarrac also finding that the complaint starts the clock. What about the Valentine case? Your Honor, the Valentine case is distinguishable because the complainant in our case, because it addresses where the Sixth Amendment right is triggered by an arrest by state authorities. And let's be candid about it. There is an intra-circuit split. There is, as noted by Judge Patel in her district court decision in Gonzalez-Avina, that she noted the split in authority. And citing the rule that the court is bound by that earlier precedent unless it has been overturned by this Court sitting on Bach or some intervening Supreme Court authority. And in our position, the only intervening Supreme Court authority would be Marion, and that Marion would not stand for the proposition that those earlier line of cases were overruled and that they are still controlling, particularly because Marion cites favorably to those earlier lines of cases. And that the court should, this three-judge panel should defer to that earlier line of cases, holding that a complaint is sufficient. And particularly here, it is of concern for us that in a situation like this, where we have these facts, criminal complaint, a detainer, and a warrant, that it would create what we would argue would be a troubling precedent that under those circumstances, that that is insufficient to trigger an individual's Sixth Amendment right to speedy trial. But Counsel, what about Loudhawk and McDonald? Why aren't those intervening Supreme Court cases that change the landscape? Your Honor, Loudhawk, we assert, is distinguishable. In Loudhawk, they rejected the Respondent's claim that the Speedy Trial Clause should not apply to the time between dismissal of one indictment and the return of a second indictment. I know. I know the facts are distinguishable, but the legal principle the Court articulates there seems broader than that, right? Somewhat, Your Honor. It does. Because it suggested that unless, I mean, if you don't have an indictment, unless the person is under arrest or out on bail on the charge, you know, that they're facing in Federal court, then there is no need to be concerned with speedy trial issues. Your client is, you know, he's not – there's no restriction on his liberty as a result of the Federal charge because he's already in State prison. Well, he is in State prison, Your Honor. But the distinguishing factor here is we have a detainer, that immigration detainer, and we know what the purpose of that immigration detainer is. You mean the ICE statement? Yes, the ICE statement. But that doesn't impose – that's what I'm saying. That doesn't impose any restriction on his liberty. He's in prison. It does, Your Honor. But at the end of his prison – of his term, we know under this circumstance the reason why that detainer is there is to hold him for purposes of that criminal prosecution. And under that circumstance, that distinguishes us from Loud Hawk and other situations where we don't have an immigration detainer. So you're – based on your reading of the cases and certainly the way you would like it to go, at least by newspaper accounts, there are literally thousands and thousands of immigrants held in State jails and ISIS ready, willing, and able to come out. And before, some of the states were cooperating. Now, not so much. Your point, I gather, is that as long as it can be shown that the government fully intends to prosecute them, that somehow the Sixth Amendment is triggered, and they better get right in there and indict them right away and charge them or you've got a speedy trial violation. Is that right? Not precisely, Your Honor. It is – we obviously are not arguing the position that the speedy trial right is triggered from the filing of the immigration detainer, which in this instance was filed on July 2, 2010. That's obviously not our position. It is that in combination with the charging decision as well as the criminal complaint and that he stood accused at that point. Okay. What if internally – if you could show internally that you've got a list of that you're notified, they're in jail, and you're going to prosecute them, but no complaint's been filed yet. But there's no question they're going to do it. Is that enough? No. It is not. And that is not the facts that we have – that we would be arguing under this circumstance. In this circumstance, it is – we are not arguing that it is from the date of the charging decision, which was May 21, 2011. We're arguing that it is from the date of the criminal complaint, that the 18-month delay from that point on. So it's the actual document. It is the document. Not the intent. It is the document that is filed. It is the document advising that you are commanded to arrest this individual and bring them before a judge without an unnecessary delay who is accused of an offense or violation based on the following document filed to the court. He is accused. Doesn't that have to be served on the defendant before the time clock starts? Well, Your Honor, it is – it is – why it was not served here is a factual inquiry that I don't think was sufficiently laid out in the – in the record before the district court as to why did this warrant, which was issued on February 2nd, remain unserved until April – what date is that? April 2013, after he only appeared in district court. Well, we had – we have these cases that talk about the Speedy Trial Act. The Speedy Trial under the Constitution, which appears to be different from the Speedy Trial Act. And the reasoning they talk about is you'll have this hanging over your head, et cetera, et cetera. So why shouldn't we – why shouldn't we hold that until it's – a document is actually filed on the defendant that it can't – it can't begin these things that we're trying to guard against, what the courts have told us it's supposed to guard against? Because, Your Honor, I believe that would then sanction the practice in this case, the practice in this case of not serving the warrant or not, because if you – the warrant was served at that point, then perhaps you could have made a – an acclaim to be brought before court. But they didn't need to do that in this instance. Well, there is – we – a practice hasn't been demonstrated. What has been demonstrated is we've got a huge problem in the United States with a lot of screwed-up things, and we find it top to bottom. Why – why wouldn't we require something to be served on the defendant before the Speedy Trial Act under the Constitution starts? Well, Your Honor, it is – that is one consideration, whether or not he is aware of the accusations. And what's the difference between that and what I asked before, where there's maybe no complaint filed, but you've got a list of people that are in the county jail, and ICE knows about it. In the old days, there was cooperation, but they're ready to arrest them. But as Judge Wallace points out, if the defendant's not even aware hadn't been served anything, how does that trigger this? Well, Your Honor, I think – and I don't want to get the site wrong for the case. It was the case involving the gentleman who had a considerable delay and was abroad for a time. And then the defendant's own knowledge of whether or not they accused, I think that is part of the analysis or part of the consideration of the mental sort of anguish that individual may be under during this period of delay. But they nonetheless stand accused. For example, if a person was indicted and the government took no steps to bring that person before the court, and the delay went perhaps to three and a half years or so, and the government was negligent in obtaining that individual, even though that individual did not know that they were indicted, the same due process considerations would be present in that circumstance. Due process, but that's another area. Sorry. Sixth Amendment consideration. I had another argument this morning. Any other questions about our colleague? Thank you very much for your argument. Both counsel, the case just argued is submitted, and the court stands in recess for the day. All rise. The court for this session stands adjourned.
judges: Wallace, Smith, Watford